IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KATHY G. LAMBERT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:14-cv-171 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Kathy G. Lambert ("Lambert") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Lambert alleges that the Administrative Law Judge ("ALJ") erred by finding that she did not meet or equal listing §14.03, concluding that she was capable of performing substantial gainful activity, and failing to properly weigh the opinion of her treating physician. I conclude that substantial evidence supports the Commissioner's decision. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 20), and **DENYING** Lambert's Motion for Summary Judgment (Dkt. No. 18).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Lambert failed to demonstrate that she was disabled

1

under the Act.[1]  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted).  The final decision of the Commissioner will be affirmed where substantial evidence supports the decision.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Lambert filed for DIB on February 13, 2011, claiming that her disability began on December 1, 2010, due to autoimmune disease.  R. 11, 152–60, 188–90.  Lambert's date last insured was December 31, 2010.  R. 13. Thus, she must show that her disability began on or before December 31, 2010 and existed for twelve continuous months to receive DIB.  42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).  The state agency denied Lambert's application at the initial and reconsideration levels of administrative review.  R. 54–65, 66–77.  On March 7, 2013, ALJ Jeffrey Schueler held a hearing to consider Lambert's disability claim.  R. 23–53.  Counsel represented Lambert at the hearing, which included testimony from vocational expert Mark Halman.  Id.

On March 19, 2013, the ALJ entered his decision analyzing Lambert's claim under the familiar five-step process[2] and denying her claim for benefits.  R. 11–19.  The ALJ found that

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work.  Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience.  See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work.

2

Lambert was insured at the time of the alleged disability onset and that she suffered from the severe impairments of polyarteritis nodosa,[3] hypertension, gastroesophageal reflux disease, and history of epilepsy/seizure disorder. R. 13. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 14. The ALJ concluded that Lambert retained the residual functional capacity ("RFC") to perform a range of sedentary work.[4] R. 14–15. Specifically, the ALJ found that Lambert was capable of lifting and carrying 10 pounds frequently and 20 pounds occasionally, sitting for 6 hours in an 8 hour day, and standing and walking for 2 hours in an 8 hour day. Id. However, she must be able to alternate postural positions between sitting and standing at 30 minute intervals. Id. Further, Lambert was limited to no more than occasional pushing or pulling with upper extremities, occasional operating of foot controls with the lower extremities, occasional balancing, stooping, kneeling, crouching, crawling, climbing ramps or stairs, and no climbing ladders, ropes, or scaffolds. Id. Lambert could tolerate no concentrated exposure to unprotected heights or hazardous machinery. Id. The ALJ also found that Lambert would be off task up to 10% of the workday and absent from work no more than one day per month. Id.

---

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[3] Polyarteritis nodosa is a blood vessel disease where the small and medium-sized arteries become swollen and damaged. See https://www.nlm.nih.gov/medlineplus/ency/article/001438.htm.

[4] An RFC is an assessment, based upon all of the relevant evidence, of what a claimant can still do despite her limitations. 20 C.F.R. § 404.1545. Descriptions and observations of a claimant's limitations by her and by others must be considered along with medical records to assist the Commissioner in deciding to what extent an impairment keeps a claimant from performing particular work activities. Id. The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567(a).

The ALJ determined that Lambert was unable to return to her past relevant work as an after school aide, but that she could perform jobs that exist in significant numbers in the national economy, such as addresser, call out operator and printed circuit board assembly touch-up operator. R. 17-18. Thus, the ALJ concluded that Lambert was not disabled. R. 19. Lambert appealed the ALJ's decision, and on February 7, 2014, the Appeals Council denied Lambert's request for review. R. 1–5. This appeal followed.

## ANALYSIS

### A. Listing § 14.03(A) and (B)

Lambert argues that the ALJ erred by finding that her impairments did not meet listing § 14.03(A) and (B) for systemic vasculitis. In support, Lambert complains that the ALJ "does not explain why the symptoms first reported November 17, 2010, and then again on December 31, 2010 were not sufficient" to show a listing on or before the date last insured. Pl. Br. Summ. J. at 10, Dkt. No. 19. Lambert points to medical records subsequent to her date last insured, asserting that these symptoms never went away. She also argues that the ALJ should have consulted a medical advisor regarding the onset date of her conditions.

A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). "When satisfied, the listings of impairments automatically result in a finding of disability. The listings are designed to reflect impairments that, for the most part, 'are permanent or expected to result in death.'" Casillas v. Astrue, No. 3:09cv00076, 2011 U.S. Dist. LEXIS 11182, at *10, 2011 WL 450426, at *4 (W.D. Va. Feb. 3, 2011) (citing 20 C.F.R. § 404.1525(c)(4)). It is well settled that Lambert must

4

establish that she meets all of the specified medical criteria of a listing. Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

Listing § 14.03(A) involves two or more organs/body systems, with: (1) one of the organs/body systems involved to at least a moderate level of severity; and (2) at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss.) Listing § 14.03(B) involves repeated manifestations of systemic vasculitis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level: (1) limitation of activities of daily living; (2) limitation in maintaining social functioning; or (3) limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

The ALJ determined that Lambert's impairments did not meet either listing because the impairments were not of listing level severity on or before December 31, 2010. The ALJ observed that "although the evidence of record for the period [on or before December 31, 2010] documents symptoms of cramping, nausea, and abdominal pain, there is no evidence of any specific work-related limitations that derive from the medically determinable impairments or the symptoms they produce." R. 16. The ALJ's decision is supported by substantial evidence in the record. Specifically, the record does not reflect that Lambert experienced a marked restriction in her ability to perform activities of daily living, maintain social functioning, or complete tasks in a timely manner due to deficiencies in concentration, persistence, or pace during the relevant period. The record also does not reflect that Lambert had at least two signs of severe fatigue, fever, malaise, or involuntary weight loss prior to December 31, 2010.

On July 26, 2009, Lambert presented to the emergency room with near syncope, reporting that she felt lightheaded and feared that she might pass out, and had an episode of

5

diarrhea earlier in the day. She reported a few similar episodes in the past at night. R. 258. Lambert was symptom-free at the time of her visit and was negative for fever, vomiting, and abdominal pain. Lambert was released and instructed to follow up with her primary physician. R. 261.

Lambert did not seek medical treatment for those issues again until November 17, 2010, when she was seen by her primary care physician William F. Whitney, M.D at the Colonial Avenue Family Practice for complaints of nausea, vomiting, and diarrhea. She did not have a fever or weight loss. R. 655. Dr. Whitney diagnosed Lambert with gastroenteritis. Id. On December 31, 2010, Lambert returned to Colonial Avenue Family Practice and was seen by Brian Dickens, D.O., complaining of upper respiratory infection symptoms, facial pain on the left side of her face at night, and vomiting. R. 652. Dr. Dickens diagnosed Lambert with acute maxillary sinusitis. R. 653.

These are the only medical notes in the record relating to Lambert's condition prior to her date last insured. Lambert asserts that the symptoms reported during office visits to the Colonial Avenue Family Practice on November 17, 2010 and December 31, 2010 were sufficient to meet or equal a listing on or before December 31, 2010, claiming that "[n]early every record as early as November 17, 2010" has shown that she suffers from fatigue, fever, and weight loss. Pl. Br. Summ. J. at 10; Dkt, No. 19. However, the November 17, 2010 record reflects that Lambert is negative for both fever and weight loss. R. 655. Overall, the evidence does not reflect that Lambert's impairments met or equaled listing § 14.03 prior to December 31, 2010.

Lambert primarily relies upon evidence reflecting that her condition continued and/or worsened after her date last insured to support her argument that she met or equaled a listing prior to that date. Pl. Br. Summ J. at 3–6, Dkt. No. 19. Evidence developed after a claimant's

6

termination of insured status may be relevant to prove disability arising before the date last insured if it relates back to the period when the claimant was insured and provides evidence of her impairments at that time. See Redditt v. Colvin, No. 7:13-cv-391, 2014 WL 2800820, at * 4, n. 3 (W.D. Va., June 17, 2014)(citing Bishop v. Astrue, No. 1:10-2714-TMC, 2012 WL 951775, at *4 (D.S.C. March 20, 2012). However, diagnosis of an underlying medical condition prior to the date last insured alone is insufficient if the symptoms or other manifestations are not disabling until after the insured status has ended. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986); Jones v. Colvin, No. 6:13-cv-59, 2015 WL 1477892, at * 4–5 (W.D. Va., March 31, 2015). Here, not only did Lambert lack disabling manifestations of her impairments before December 30, 2010, but on January 4, 2011, a few days after her date last insured, Dr. Dickens examined Lambert, diagnosed her with acute maxillary sinusitis, and wrote a letter stating that she could return to full duty work with no restrictions on January 6, 2011. R. 650–51. Thus, the medical evidence supports the ALJ's conclusion that Lambert's condition did not rise to the level of a listed impairment on or before December 31, 2010.

Lambert also complains that the ALJ did not sufficiently explain why Lambert's condition did not meet listing 14.03(A) or (B). At step three, the ALJ held that "claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1," but did not specifically address listing 14.03(A) or (B) in his decision, or explicitly state the reasons that Lambert's impairment did not meet a listing.[5]

---

[5] The ALJ stated as follows:

> Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526.

7

An ALJ has a duty to explain the administrative decision so as to enable meaningful judicial review. Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987). The Fourth Circuit has held that the ALJ must explain his rationale when determining whether a plaintiff's specific injury meets or equals a listed impairment, when it is otherwise impossible to determine whether substantial evidence supports the finding. See Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir.1986). However, "it is not always necessary for the ALJ to present evidence under a particular step, as long as it is possible, from reading the ALJ's decision in its entirety, to determine whether there was substantial evidence to support the ALJ's conclusions." Patterson v. Colvin, No. 4:12-1021, 2013 U.S. Dist. LEXIS 115243, at *13, 2013 WL 4441986, at *5 (D.S.C. Aug. 15, 2013) (citing McCartney v. Apfel, 28 F. App'x 277, 279-80 (4th Cir. 2002) (unpublished) (finding "the ALJ need only review medical evidence once in his decision," and that the ALJ's thorough analysis of the medical evidence at step four was sufficient to determine whether claimant satisfied step three)); see also Kiernan v. Astrue, No. 12-cv-459, 2013 U.S. Dist. LEXIS 74680, at * 16, 2013 WL 2323125, at *5 (E.D. Va. May 28, 2013) ("Where the ALJ analyzes a claimant's medical evidence in one part of his decision, there is no requirement that he rehash that discussion in his Step 3 analysis.").

In this case, notwithstanding the ALJ's failure at step three to explicitly state the reasons that Lambert's impairment did not meet or equal listing 14.03(A) or (B), substantial evidence supports such a finding. Read as a whole, the ALJ's decision establishes that the appropriate factors were considered in determining that Lambert's impairment did not equal listing 14.03(A)

---

In reaching this conclusion, the undersigned has considered the requirements of the appropriate sections of the Listing of Impairments contained in 20 CFR Part 404, Appendix 1 to Subpart P. However, as will be shown in the evaluation that follows, the objective medical evidence does not support a conclusion that impairments were of listing-level severity at any time prior to January 1, 2011.

R. 14.

or (B). See Tolliver v. Astrue, No. 3:09cv372, 2010 U.S. Dist. LEXIS 92141, at *10, 2010 WL 3463989, at *4 (E.D.Va. Sept. 3, 2010) (holding that when the decision as a whole establishes that the ALJ considered the appropriate factors in determining plaintiff did not meet the requirements of any listing, any failure to explicitly discuss a listing is, at most, harmless error for which remand is inappropriate) (citations omitted); see also Smith v. Astrue, 457 F. App'x 326, 328 (4th Cir. 2011) (finding that, despite the ALJ's "cursory" explanation at step three, the ALJ's analysis at other steps constituted substantial evidence in support of the step three determination); Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (holding that even when confronted with error, the district court should affirm the Commissioner's decision if there is "no question . . . that he would have reached the same result notwithstanding his initial error"); Holcomb v. Astrue, No. 3:08-2881, 2009 U.S. Dist. LEXIS 111498 at * 19, 2009 WL 4586601, *8 (D.S.C. Dec.1, 2009) (finding the ALJ's failure to specifically address Listing 12.05 was harmless error when the plaintiff had not shown she met the requisite criteria). As set out above, in his decision, the ALJ thoroughly discussed the evidence relating to plaintiff's medical history and treatment, including her polyarteritis nodosa. Therefore, the ALJ did not err in determining Lambert's condition did not meet the requirements of listing 14.03(A) or (B) and remand is not warranted on this ground.

### B. Medical Consultant

Lambert also asserts that the ALJ should have consulted a medical advisor regarding the onset date of her conditions, which Lambert alleged was December 1, 2010. When an ALJ determines that an individual is disabled, he or she must also establish the onset date of the disability. Social Security Ruling ("SSR") 83-20, 1983 SSR LEXIS 25, at *2, 1983 WL 31249, at *1 (SSA 1983). When an ALJ must infer the onset date because of a lack of evidence in the

9

record, the ALJ is required to consult a medical advisor to assist in the determination. SSR 83-20, 1983 SSR LEXIS 25, at *6, 1983 WL 31249, at *3. The Fourth Circuit has explained that SSR 83-20 "does not expressly mandate that the ALJ consult a medical advisor in every case where the onset of disability must be inferred." Bailey v. Chater, 68 F.3d 75, 79 (4th Cir. 1995). Instead, the ALJ must obtain the assistance of a medical advisor when the evidence of onset is ambiguous and adequate medical records are not available. Id.

Here, the ALJ found that Lambert was not disabled; thus, he did not establish an onset date for her disability. Further, this was not a case where the evidence regarding onset was ambiguous or the medical records were inadequate. The ALJ had no need to appoint a medical advisor because he was able to consider direct evidence of Lambert's condition before and after the alleged disability onset date. See Pugh v. Bowen, 870 F.2d 1271, 1278 n.9 (7th Cir. 1989) (medical advisor was unnecessary where the ALJ had a complete medical chronology of the claimant's condition throughout the relevant time period); Emrich v. Colvin, No. 1:13cv1012, 2015 U.S. Dist. LEXIS 24957, at *14, 2015 WL 867287, at *5–6 (M.D.N.C. March 2, 2015) (medical advisor not necessary where the ALJ had direct evidence concerning claimant's condition prior to the onset date) (collecting cases.) Accordingly, I find the ALJ's decision regarding disability was based on an adequately developed medical record, and thus he had no need to consult a medical advisor.

### C. RFC and Treating Physician Opinion

Lambert argues that the ALJ's RFC analysis is not based upon substantial evidence and that the RFC should have been "more restrictive." Pl. Br. Summ. J. at 11, Dkt. No. 19. In support of this argument, Lambert asserts that "substantial evidence in the record from all of [Lambert's] treating physicians shows that this is the case." Id. Lambert also asserts that the

ALJ erred by failing to adopt the opinion submitted by Dr. Whitney. Having reviewed the record as a whole, I find that substantial evidence supports the ALJ's decision denying Lambert's claims.

Lambert broadly argues that the ALJ improperly weighed the opinions of "all of [her] treating physicians" in determining her RFC. Pl. Br. Summ. J. at 11, Dkt. No. 19. However, there is only one treating physician opinion in the record, rendered by Dr. Whitney on September 13, 2011. R. 851.[6] Dr. Whitney completed a physical capacities form on September 13, 2011, nine months after Lambert's date last insured, and determined that Lambert was unable to lift and carry more than 5 pounds, use her hands for pushing, pulling or repetitive motion, stand/walk more than 15 minutes at a time up to a total of 2 hours in an 8-hour period, sit in a work posture more than 4 hours, and that she would be absent from work more than 2 days a month due to her impairments. R. 851. Dr. Whitney wrote on the top of the form "limitations as of 12/31/10 and currently." Id. The ALJ gave no weight to Dr. Whitney's opinion regarding Lambert's RFC, finding that the medical record did not support such restrictive limitations on or before December 31, 2010. R. 17.

When making an RFC assessment, the ALJ must assess every medical opinion received into evidence. See 20 CFR § 404.1527(c). The social security regulations require that an ALJ give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. § 416.927(c)(2); Saul v. Astrue, No. 2:09-cv-1008, 2011 WL 1229781, at *2 (S.D.W. Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is

---

[6] Lambert fails to identify any other treating physician opinions in the record.

not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 416.927(c)(2)–(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09-cv-622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010).

Here, the ALJ specifically addressed the "Physical Capacities" form completed by Dr. Whitney on September 13, 2011, and found that the medical record did not support Lambert's limitations on or before December 31, 2010. R. 17. Indeed, Dr. Whitney's treatment records prior to the date last insured do not support the level of disability alleged in his RFC questionnaire. Lambert's physical examinations in November and December 2010 were normal, aside from her complaints of diarrhea in November and tenderness to palpation over her sinuses in December. R. 652–55. Further, following an appointment on January 4, 2011, Dr. Dickens indicated that Lambert could return to full work on January 6, 2011 with no restrictions. (R. 651.) Therefore, I find that substantial evidence supports the ALJ's decision regarding the weight given to Dr. Whitney's opinion, and remand is not warranted on this ground.

As noted by the ALJ, there is relatively little medical evidence of record for the period prior to December 31, 2010. The ALJ determined that the medical evidence established that Lambert had the following severe impairments: hypertension, gastroesophageal reflux disease, and a history of epilepsy/seizure disorder. He further determined that she had early symptoms of polyarteritis nodosa, though the condition was not diagnosed until April 2011. The ALJ recognized that symptoms of cramping, nausea, and abdominal pain were documented in the

evidence of record on or before December 31, 2010; however, he concluded that there was no evidence of any specific work-related limitations resulting from her impairments or symptoms. Indeed, the issue is not whether Lambert had physical impairments or experienced symptoms, but whether those impairments and symptoms prevented her from performing the limited range of sedentary jobs identified by the vocational expert. See Hays v. Sullivan, 907 F.2d 1453, 1457-58 (4th Cir. 1990) ("An individual does not have to be pain-free in order to be found 'not disabled.'"). While the ALJ recognized that the medical evidence established greater limitations in 2011 and 2012, he noted that the "worsening of [Lambert's] condition [following her date last insured] is not material to the determination of [her] residual functional capacity in the instant case." R. 17.

The regulations empower the ALJ to review the evidence, assign weight to the opinions of reviewing, consulting and treating physicians, and formulate an RFC. 20 C.F.R. §§ 404.1545, 404.1546. An ALJ need not parrot a single medical opinion, or even assign "great weight" to any opinions, in determining an RFC assessment. Instead, an ALJ is required to consider "all of the relevant medical and other evidence." See 20 C.F.R. § 404.1545(a)(3). When determining Lambert's RFC, the ALJ considered all the evidence of record. The ALJ also considered Lambert's own reports of her activities and the treatment notes from her providers. The RFC determined by the ALJ in this case takes into account all of the evidence cited in the decision. Having reviewed the record as a whole, I find that substantial evidence supports the ALJ's determination that Lambert is capable of a limited range of sedentary work.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the

13

defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to the Honorable Glen E. Conrad, Chief United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection.

Enter: February 3rd, 2016

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge